ESPERANCE v CHESTERFIELD TOWNSHIP

Docket No. 77-3142. Submitted October 5, 1979, at Detroit.—Decided April 16, 1979.

Chesterfield Township, Macomb County, became eligible for three additional class C liquor licenses. The township board utilized a system of elimination ballots to determine which of 27 applicants would be granted the licenses. The ballots were secret and resolutions for each of the three successful applicants were then approved by roll call votes. Following the meeting, William Esperance brought an action against the township for a declaration that the board's voting procedure was in violation of the Open Meetings Act, and seeking to have the board's decision granting the licenses invalidated and to have the board enjoined from future use of this method of voting. The Macomb Circuit Court, Robert J. Chrzanowski, J., granted the defendant's motion for summary judgment on the basis that the plaintiff failed to state a cause of action. Plaintiff appeals. *Held:*

1. The section of the Open Meetings Act which allows a decision of a public body to be invalidated for violation of three enumerated subsections of the act is to be read in the disjunctive rather than the conjunctive. A violation of any one of the three subdivisions is sufficient to allow invalidation. Therefore, the plaintiff, who pled violation of only one subsection, did state a cause of action.

. 2. The act is interpreted to prohibit a public body from voting by secret ballot.

3. It is not necessary to invalidate the board's decision merely because the act prohibits voting by secret ballot. A party seeking invalidation of a decision must allege not only a violation of the act but also that the violation impaired the

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes § 298.

[2, 4, 5, 7] 56 Am Jur 2d, Municipal Corporaitons, Counties, and Other Political Subdivisions § 161.

Validity, construction, and application of statutes making public proceedings open to the public. 38 ALR3d 1070.

[3, 6] 56 Am Jur 2d, Municipal Corporations, Counties and Other Political Subdivisions §§ 168–176.

rights of the public. Because the plaintiff failed to allege impairment of the rights of the public, the decision will not be invalidated.

4. Under the circumstances, there is no real and imminent danger of irreparable injury requiring the issuance of an injunction.

Affirmed in part, reversed in part.

M. J. KELLY, J., dissented. He would not go so far as to declare that every vote taken at a public meeting must carry with it the identity of the voter. The act does not require that voting be carried out in any prescribed or formal manner. Judge KELLY also would find no requirement that the plaintiff must allege that a violation of the act impaired the rights of the public. Since the majority has found a violation in this case, he would remand to give the plaintiff the opportunity to prove an impairment of rights.

### OPINION OF THE COURT

1. STATUTES — CONSTRUCTION — WORDS AND PHRASES — CONJUNCTIVE — DISJUNCTIVE.

    The use of the word "and" to join clauses in a statute usually connotes the conjunctive; however, where it is clear that the Legislature intended to have the clauses read in the disjunctive, the word "or" may be substituted for the word "and".

2. STATUTES — OPEN MEETINGS ACT — PUBLIC BODIES — INVALIDATION OF DECISION.

    Each of three subsections of the Open Meetings Act, listing requirements for meetings of public bodies, is an independent objective of the act; therefore, the violation of any one of those requirements by a public body in reaching a decision is, under the act, an independent basis for invalidating the decision (MCL 15.263[1], [2], [3], 15.270[2]; MSA 4.1800[13], [1], [2], [3], 4.1800[20][2]).

3. STATUTES — OPEN MEETINGS ACT — OBJECTIVES — SECRET BALLOTS.

    The Open Meetings Act was enacted to provide openness and accountability in government and is to be interpreted so as to accomplish this goal; in keeping with this objective, because the legislative history of the act supports the contention that the act was passed to combat secret voting, and because of the implicit requirement that all parts of a meeting be open to the public, the act prohibits a public body from voting by secret ballot (MCL 15.261 *et seq.;* MSA 4.1800[11] *et seq.).*

4. STATUTES — OPEN MEETINGS ACT — PUBLIC BODIES — INVALIDA-
TION OF DECISIONS — COURT'S DISCRETION.
   Invalidation of decisions made by a public body in violation of the
   Open Meetings Act is discretionary with the court (MCL
   15.270[2]; MSA 4.1800[20][2]).

5. PLEADING — STATUTES — OPEN MEETINGS ACT — IMPAIRMENT OF
RIGHTS OF PUBLIC.
   A party seeking to have a decision of a public body invalidated
   because of a violation of the Open Meetings Act must allege not
   only that the public body failed to comply with the act, but also
   that this failure impaired the rights of the public (MCL
   15.270[2]; MSA 4.1800[20][2]).

DISSENT BY M. J. KELLY, J.

6. STATUTES — OPEN MEETINGS ACT — VOTING — SECRET BALLOT.
   *There is no requirement in the Open Meetings Act that voting
   and balloting by a public body be done in any formal manner;
   absent such a requirement, a vote of a township board without
   revealing the identity of the voter is not per se a violation of
   the act (MCL 15.261 et seq.; MSA 4.1800[11] et seq.).*

7. PLEADING — STATUTES — OPEN MEETINGS ACT — IMPAIRMENT OF
RIGHTS OF PUBLIC.
   *A party challenging the validity of a decision of a public body on
   the basis of an alleged violation of the Open Meetings Act need
   not allege that the violation impaired the rights of the public
   in order to state a cause of action, and where a violation of the
   act has been found, the plaintiff should be given the opportu-
   nity to prove an impairment of rights by offering proofs at trial
   (MCL 15.270[2]; MSA 4.1800[20][2]).*

*Robert E. Childs,* for plaintiff.

*Anthony, Hearsch, Biernat & Bucci,* for defen-
dant.

Before: BRONSON, P.J., and M. J. KELLY and D. C.
RILEY, JJ.

BRONSON, P.J. The present case involves the
proper interpretation to be given the recently

enacted Open Meetings Act, MCL 15.261 *et seq.;* MSA 4.1800(11) *et seq.,* specifically whether the act prohibits a public body from voting by secret ballot.

Due to an increase in population, defendant township became eligible for three additional class C liquor licenses.[1] Approximately 27 people applied for the licenses and in order to trim the number of applicants to the three that would be granted the licenses, the township board utilized a system of elimination ballots. On the first elimination ballot the board members voted for 12 applicants and passed the ballots to the clerk who tallied the votes and announced the names of the 12 people who received the most votes. The clerk did not, however, announce which board members voted for which applicants nor did she record the votes in the minutes. This same procedure was repeated to reduce the number of applicants from 12 to six and finally from six to three. After the number of applicants had been reduced to three, individual resolutions for each successful applicant were approved by a roll call vote which was recorded in the minutes. Although plaintiff was present at the meeting, he raised no objection to this voting procedure.

Following the meeting, plaintiff commenced the present lawsuit, seeking a declaration pursuant to GCR 1963, 521 that the voting procedure used by the township board was in violation of § 3(2)[2] of the Open Meetings Act. Plaintiff also sought to have the board's decision granting the liquor li-

---

[1] The liquor licenses were issued pursuant to MCL 436.1 *et seq.;* MSA 18.971 *et seq.* The applicants first applied to the Michigan Liquor Control Commission which in turn sought local approval of the applicants by the township pursuant to MCL 436.17; MSA 18.988.

[2] MCL 15.263(2); MSA 4.1800(13)(2).

"All decisions of a public body shall be made at a meeting open to the public."

censes invalidated and to enjoin the board from using this method of voting in the future. Defendant township moved for summary judgment claiming plaintiff failed to state a cause of action under the act. The trial court granted the motion and plaintiff now appeals as of right.

In support of its motion for summary judgment defendant first alleged that plaintiff's complaint failed to allege the statutory requirements set forth in MCL 15.270(2); MSA 4.1800(20)(2) which are prerequisities to the invalidation of any decision of a public body under the act.

"A decision made by a public body may be invalidated if the public body has not complied with the requirements of § 3(1), (2) and (3) in making the decision * * *."[3]

Defendant contends that since the Legislature used the word "and" the requirements are conjunctive, not disjunctive. According to defendant, plaintiff must plead and prove violations of all three sections before a decision can be invalidated, and since plaintiff only alleged a violation of § 3(2) he failed to state a cause of action.

While it is true that the use of the word "and" in a statute usually connotes the conjunctive, this rule is not an absolute.

"The popular use of 'or' and 'and' is so loose and so frequently inaccurate that it has infected statutory

[3] "Sec. 3. (1) All meetings of a public body shall be open to the public and shall be held in a place available to the general public. All persons shall be permitted to attend any meeting except as otherwise provided in this act.

"(2) All decisions of a public body shall be made at a meeting open to the public.

"(3) All deliberations of a public body constituting a quorum of its members shall take place at a meeting open to the public except as otherwise provided in sections 7 and 8."

enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context." *Heckathorn v Heckathorn,* 284 Mich 677, 681; 280 NW 79 (1938).

Therefore, when it is clear that the Legislature intended to have the clauses read in the disjunctive, the word "or" can be substituted for the conjunctive "and". See *Aikens v Dep't of Conservation,* 387 Mich 495; 198 NW2d 304 (1972). In *Aikens,* the Department of Conservation seized certain catches of perch on the grounds that the fish were undersized as they failed to meet the "in the round" length requirement of the following statute:

"(d) Perch, of a less length than 8 1/2 inches in the round *and* filleted perch of a less weight than 1 3/4 ounces; perch with heads and tails off of a less length than 5 1/2 inches; * * *" (Emphasis added.) MCL 308.14(1)(d); MSA 13.1505(1)(d).

The fisherman contended that because the statute used the word "and" the fish were not illegally caught unless they were less than 8-1/2 inches in the round *and* weighed less than 1-3/4 ounces when filleted, *and* were less than 5-1/2 inches in length with the heads and tails off. The Supreme Court, however, stated that a careful reading of the statute indicated that the Legislature intended to set up three separate tests, not one, and if the fish failed to meet any of the tests, the fish were illegally possessed.

The *Aikens* case is applicable to the present case. A careful reading of the statute shows that the Legislature intended that a decision of a public

body could be invalidated for a violation of either § 3(1), (2), or (3), as each was an independent objective of the act.

Defendant's interpretation of the statute would render it meaningless. Under such an interpretation, a public body would not be in violation of the statute if it made its decisions in public but deliberated in private or conversely, deliberated in public but made its decisions in private, or if it opened its meetings to the public, but held the meetings in a place which was inaccessible to the public. The Legislature clearly intended to make all three actions illegal, and intended to made any of the three violations an independent basis for invalidating the illegal actions. Plaintiff did not fail to state a cause of action for this reason.

Defendant next contends that the Open Meetings Act does not expressly prohibit secret ballots, but instead only requires that "[a]ll decisions of a public body shall be made at a meeting open to the public".[4] Therefore, according to defendant the township board complied with the act because even though it voted by secret ballot,[5] the balloting was done at a meeting open to the public. We find this contention unconvincing.

Prior to enacting the current Open Meetings Act, the Legislature created a special committee to study the operation of the former open meetings law.[6] The committee, in its report recommending passage of a new Open Meetings Act, decried the evils of secret voting by public officials.

"Secret voting by elected officials at every level in the

---

[4] MCL 15.263(2); MSA 4.1800(13)(2).

[5] The vote was by secret ballot even though each of the final three applicants was granted a liquor license by a roll call vote. This final vote was merely perfunctory, since the real decisions had already been made in the preliminary secret balloting.

[6] MCL 15.251 et seq.; MSA 4.1800(1) et seq.

government tends to foster an atmosphere of suspicion and mistrust of decision-making by public officials, whether it be real or imagined. Such an atmosphere is an intolerable impediment to respect for our public institutions as well as public officialdom and cannot be allowed to persist.

"As U.S. Senator Adlai E. Stevenson III of Illinois has observed, 'Excessive secrecy breeds distrust. It prevents accountability. It does violence to the principle of government based on the informed consent of the governed.' "[7]

The legislative history of the act thus supports the contention that the act was passed to combat secret voting in all of its forms whether it be by closed meeting or by secret ballot.

In *Wexford County Prosecutor v Pranger,* 83 Mich App 197; 268 NW2d 344 (1978), this Court stated that the Open Meetings Act was enacted to provide openness and accountability in government, and is to be interpreted so as to accomplish this goal. Defendant's interpretation of the act would not be in keeping with this objective. It can hardly be contended that a vote by secret ballot at an open meeting is any more open than a vote at a closed meeting. In either case the public official has shielded his stand from public scrutiny and accountability.

It should also be recognized that because the act requires all meetings to be opened to the public it implicitly requires that all parts of the meeting (unless specifically excluded by the act) also be open to the public. Clearly a public body could not open only the first five minutes of the meeting and then close the rest of the meeting and argue that it complied with the Open Meetings Act. Similarly,

---

[7] Special Senate Study Committee on Political Ethics, Final Report (1973), at 10.

a secret ballot effectively closes part of a meeting to the public, since the balloting withdraws from public view an essential part of the meeting.

For these reasons, we hold that the Open Meetings Act prohibits a public body from voting by secret ballot,[8] and the trial court erred in not granting plaintiff's complaint for declaratory relief on this point.

Merely because secret balloting is prohibited by the Open Meetings Act[9] does not automatically mean that the board's decision in the present case must be invalidated, and that an injunction must issue restraining defendant from utilizing the procedure in the future.

Invalidation of decisions made in contravention of the act is discretionary with the court. Those seeking to have the decision invalidated must allege not only that the public body failed to comply with the act, but also that this failure impaired the rights of the public. MCL 15.270(2); MSA 4.1800(20)(2). This was not done in the present case. Plaintiff did not allege that the township board willfully or intentionally sought to violate

---

[8] We are definitely not alone in interpreting the Open Meetings Act in this manner. In interpreting its own Open Meetings Act which was similar to Michigan's in that it only required that "all public proceedings shall be open to any citizen of this state * * *" (Burns Indiana Statutes Annotated, Code Edition, 5-14-1-4), the Indiana Supreme Court also held that the statute prohibited secret balloting. *State v La Porte Superior Court #2*, 249 Ind 152; 230 NE2d 92 (1967).

[9] The fact that the Open Meetings Act prohibits secret balloting does not mean that all votes must be roll call votes. The act's requirements are met when the vote is by roll call, show of hands, or any other method whereby the way the public official voted is made known to the public. For instance, in the present case if the board members' names had been inscribed on the elimination ballots, so that in recording the votes in the official minutes the clerk could determine which board member voted for which candidates, the Open Meetings Act would be satisfied. This is so because even though the way the members voted would not be proclaimed aloud at the meeting, any interested person could determine how the board members voted by merely checking the official minutes.

the act. Nor is there any allegation that the board or any of its members were trying to cover up for misdeeds or to hide the identity of the persons for whom they voted.[10] Since plaintiff failed to allege that the rights of the public were impaired by the secret ballot, he failed to state a cause of action under the act for invalidating the decision of the board.

Finally, the record indicates that the board acted in good faith in utilizing the voting procedure. There was no subterfuge involved, but instead the board adopted the procedure as an expedient, albeit improper, method of narrowing the field of applicants. Under this set of circumstances, there is no real and imminent danger of irreparable injury requiring issuance of an injunction. See *Wexford County Prosecutor v Pranger, supra,* at 205.

Affirmed in part and reversed in part. No costs, a public question being involved.

D. C. RILEY, J., concurred.

M. J. KELLY, J. *(dissenting).* I agree with the majority opinion insofar as it holds that the prerequisites to the invalidation of any decision of a public body listed in MCL 15.263(1)-(3); MSA 4.1800(13)(1)-(3) are disjunctive rather than conjunctive. However, I write to express my reluctance to go so far as to declare that every vote taken at a public meeting must carry with it the identity of the voter. The meeting of the township board was open and accessible, advance notice was given, and there is no claim that appellant or any

---

[10] These are merely examples of *some* of the situations which could show an impairment of the rights of the public. These examples are not intended to constitute either an all-inclusive list or a list of mandatory allegations.

member of the public was barred or hindered in attendance or in opportunity to address the public body. Had there been any request for a tally, the township board would have been called upon to respond; if it had refused, I believe the spirit of the Open Meetings Act would have been violated, but I would not go that far on this record.

The act has not prescribed procedures for the conduct of voting by public bodies. Nothing in the act requires that voting and balloting, if conducted in public, be announced publicly, conducted by "yes" or "no" vote, or accomplished in any formal way as plaintiff contends. Section 9 of the act does require that the minutes "shall include all roll call votes taken at the meeting", but the act does not and cannot purport to dictate when a roll call vote is required or describe the formalities for conducting such a vote. Are we to say that, if there had been 100 such applicants, the act would be violated unless 100 roll call votes were taken, or 66, or 33?

I would prefer a far more detailed chronicle of the legislative processess underlying the act before finding a per se violation on these facts. There must be countless situations before public bodies calling for a process of elimination and if that is required to be accomplished with the same formality as is required for the adoption of a final decision, *(e.g.,* a roll call vote), the ramifications might be, if not incalculable, certainly unduly burdensome.

Apart from my reluctance to find a violation of the act on these facts, I must also dissent from the majority's ultimate disposition of this case after finding a violation. The majority holds that, although there was a violation of the act in the

present case, "since plaintiff failed to allege that
the rights of the public were impaired by the
secret ballot, he failed to state a cause of action
under the act for invalidating the decision of the
board". I respectfully disagree.

MCL 15.270(2); MSA 4.1800(20)(2) states:

"(2) A decision made by a public body may be invali-
dated if the public body has not complied with the
requirements of section 3(1), (2), and (3) in making the
decision or if failure to give notice in accordance with
section 5 has interfered with substantial compliance
with section 3(1), (2), and (3) and the court finds that
the noncompliance or failure has impaired the rights of
the public under this act."

I perceive no requirement in the statute that the
plaintiff's complaint must allege that the violation
impaired the rights of the public, for it states that
"[a] decision made by a public body may be invali-
dated if * * * the court finds that the non-compli-
ance or failure has impaired the rights of the
public". Because this case was decided on a motion
for summary judgment, the facts have not been
fully explored. Although it seems unlikely from
the facts already presented that plaintiff can dem-
onstrate sufficient reason to invalidate this deci-
sion, he should nevertheless be given the opportu-
nity to prove such facts, especially in view of the
fact that the trial court and the parties addressed
themselves almost exclusively to the issue of
whether secret balloting was prohibited by the act
and did not enter into a contest over the other
facts of the case. Therefore, I would hold that as a
violation of the act is found here, plaintiff should
be given an opportunity to prove an impairment of
rights by adducing proofs thereof.